# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CONSUMER ENERGY SOLUTIONS, INC.,

    Plaintiff,

v.                                                            CASE NO.: 8:17-cv-211-T-30MAP

CHRISTOPHER JACOBS,

    Defendant.
_____/

## ORDER

This cause comes before the Court upon Plaintiff's Motion for Reconsideration (Dkt. 7) of its Emergency Motion for Temporary Restraining Order (Dkt. 2). After consideration, the Court GRANTS both of Plaintiff's motions.

## FACTUAL ALLEGATIONS

CES is an energy broker that helps its business and residential customers get the best rate for their electricity and gas by pricing with many top suppliers.

In the course of its business, CES has developed and maintained confidential information ("Confidential Information") regarding its trade secrets, business plans, financial strategies and finances, including but not limited to marketing methods, instructional techniques, customer lists, prospective customer information, supplier information, and internal pricing, business, and accounting information. This information is not generally known to other persons who can obtain economic value from its disclosure, nor is the information readily ascertainable by proper means.

CES has developed relationships with actual and prospective customers. Information regarding these relationships is proprietary Confidential Information. CES has made reasonable efforts to maintain the confidentiality of this information. CES has required the use of confidential computer login IDs and passwords, instructed employees that the Confidential Information is proprietary, and required employees to sign written agreements that provide that disclosure and use of Confidential Information is prohibited.

CES hired Defendant as a Sales Representative in 2013. Defendant was responsible for managing CES's customer relationships and obtaining new customers. In early 2016, CES promoted Defendant to Assistant Sales Manager. In that position, Defendant was exposed to information regarding CES operations, client contact information, and payment agreements between CES and suppliers. Defendant was demoted from that position in October 2016 and continued the remainder of his employment as a Sales Representative.

In the course of his employment, Defendant had regular access to CES's customers and its Confidential Information. On January 29, 2016, Defendant signed a Confidentiality Agreement ("Agreement"). The Agreement provides, in pertinent part, that during his employment with CES and following the termination of his employment, Defendant:

> Shall not, without CES['s] prior written consent . . ., disclose or use at any time, …[or] divulge for any reason, any Confidential Information, regardless of whether [Defendant] developed or originated such information in performance of his/her duties for CES. [Defendant] further agrees not to render any services for or on behalf of any person or entity which has improperly acquired or misappropriated any such Confidential Information.

Defendant stipulated that a breach of the Agreement would cause serious harm to CES. (Agreement, ¶ 5.)

In January 2017, CES's management witnessed Defendant taking photographs of his computer screen. CES's Assistant Senior Sales Manager saw that Defendant was taking pictures of CES's proprietary customer database. Defendant captured photographs of multiple accounts names and other Confidential Information. CES recorded Defendant's behavior via video camera and saved the footage.

Defendant has worked with many of CES's large customers. He was exposed to Confidential Information that could be used to sell these customers through a competing business or to start his own business using CES's confidential leads and resources.

After checking Defendant's email account, CES management observed that Defendant had been emailing CES's confidential log-in information, customer account information, and usage tools to his personal email address, in violation of company policy. The various log-ins he took give him access to confidential utility and client portals that CES uses for pricing and processing, as well as end dates of current customer contracts and customer account information.

After checking his internet browsing history, CES management observed that Defendant had been searching for jobs on CES's computer and had an email registered to him called "eliteenergyconsultants@gmail.com." The browser history showed Defendant was logged into this email account from his CES computer during work. While logged into the account, Defendant accessed the inbox, Drafts, and Sent folders.

CES fears Defendant is using the leads he took from CES to open his own competing business or work with a competitor of CES. Defendant has told another CES employee that he plans to contact CES's customers and slander CES's name, as well file false complaints

with authorities that govern the industry. This would be extremely damaging to CES and its reputation.

On January 19, 2017, CES served Defendant with a cease and desist letter reminding him of his obligations under the Agreement. Defendant has not provided any assurances in response that he has ceased violating the Agreement.

On January 25, 2017, Defendant contacted at least one of CES's customers with whom he worked with while employed at CES. Defendant said that "he needs [Tom] to call him right away about a new lower rate…" Defendant provided the customer his phone number, which matches the phone number Defendant used to contact CES management. This customer's account is potentially worth over $4,469.00 to CES. The last enrollment CES did with this customer was worth $4,469.00.

On January 25, 2017, Defendant (using the email address Chrisjacobs1011@outlook.com) sent the same customer an email quoting him rates. Specifically, Defendant stated, "Can you please advise me on a good time to call you in regards to your BGE accounts that are currently under contract with Direct Energy. If you recall a little over a year ago, yourself and I enrolled the accounts with Direct, and we were splitting hairs to get the price down to the [CONFIDENTIAL]. Well now there is mid [CONFIDENTIAL] cents per kwh pricing available for your account meaning about another $10,000 dollars to your favor along with the reduction. I do need to speak with you soon, at last look the prices were at [CONFIDENTIAL] Cents per Kwh. You can reach me at my mobile number below as this is time sensitive. I look forward to hearing back from you…." In the email, Defendant identified himself as "Christopher M. Jacobs II, Senior

4

Energy Analyst," but did not identify the company with whom he was associated.

## DISCUSSION

A temporary restraining order ("TRO") is designed "to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). The Court may issue a TRO without notice to the adverse party if the facts alleged in the verified complaint show that the moving party will sustain irreparable damage before the adverse party can be heard in opposition, and the movant's attorney certifies any efforts made to give notice to the adverse party. Fed. R. Civ. P. 65(b)(1). The Court should enter a TRO where the moving party establishes the following four elements: (1) a substantial likelihood of success on the merits; (2) that the TRO is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the TRO would cause the other litigant; and (4) that entry of the TRO would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

CES has established each of the elements required for entry of a TRO.

First, based on the verified pleadings, it appears that CES is likely to succeed on the merits of its claim that Defendant has breached the Agreement. The Agreement prohibits Defendant from misappropriating or using any Confidential Information and from rendering any services for any person or entity that has improperly acquired Confidential Information. CES's allegations demonstrate a substantial likelihood that Defendant has breached the Agreement by misappropriating and using CES's Confidential Information and/or by rendering services for a person or entity that has improperly acquired

Confidential Information. These allegations include but are not limited to the following: (1) Defendant photographed CES's proprietary customer database, including multiple accounts names and other Confidential Information, (2) Defendant emailed CES's confidential log-in information to his personal email address, giving him access to confidential utility and client portals that CES uses for pricing and processing, (3) Defendant has an email address that suggests he has either gone into business for himself or works for a competitor, and he has used that email account in attempts to solicit at least one CES customer, and (4) Defendant has used Confidential Information in his attempts to solicit CES customer(s).

Second, it appears from the verified pleadings that CES will suffer immediate and irreparable harm from Defendant's misappropriation and use of the Confidential Information. Defendant is currently using the Confidential Information in an attempt to solicit CES customers. Without the benefit of a TRO, CES risks losing thousands of dollars of business and/or suffering damages to its goodwill. Given the imminence of this harm, it is appropriate to enter a TRO before Defendant can be heard in opposition.

Third, on a temporary basis, no harm will be inflicted on Defendant by requiring him to return CES's property and to cease using CES's Confidential Information to solicit customers.

Fourth, the public interest will be served by protecting the trade secrets and proprietary information of businesses, like CES, who have invested resources in developing intellectual property to serve their customers.

In conclusion, CES has presented facts sufficient to warrant the entry of a TRO. A bond of $15,000 is sufficient to cover any damages suffered by Defendant if this Order is later found to have been improvidently entered.

Based on the foregoing, it is ORDERED and ADJUDGED that:

1. The Court GRANTS Plaintiff's Motion for Reconsideration (Dkt. 7), VACATES its Order dated January 27, 2017 (Dkt. 6), and GRANTS Plaintiff's Motion for a Temporary Restraining Order (Dkt. 2) to the extent that it seeks a TRO.

2. Defendant is temporarily enjoined from violating the Agreement, including by (a) misappropriating, disclosing, or using CES's Confidential Information, or (b) rendering services on behalf of himself or another entity which has improperly acquired any such Confidential Information. Defendant shall immediately return all Confidential Information to CES, including any information copied by Defendant during his employment with CES, within 48 hours of receipt of this Order. Defendant is restrained from destroying (or causing to be destroyed) any information or documents which are potentially relevant to the claims in this case.

3. This TRO is conditioned upon Plaintiff posting a cash or surety bond in the amount of $15,000 with the Clerk of this Court.

4. To the extent Plaintiff's Motion (Dkt. 2) seeks a preliminary injunction, it is referred to Magistrate Judge Mark A. Pizzo to conduct a hearing and issue a Report and Recommendation.

5. The Parties shall appear at a hearing on Plaintiff's Motion for a Preliminary Injunction before Magistrate Judge Mark A. Pizzo on **THURSDAY, FEBRUARY**

**9, 2017, AT 10:00 A.M.** in Courtroom 11B of the Sam M. Gibbons U.S. Courthouse, 801 North Florida Avenue, Tampa, Florida 33602.

6. Plaintiff shall obtain immediate service of process on Defendant of the summons, complaint, and TRO as stated in Local Rule 4.05(b)(5).

7. The TRO shall expire fourteen (14) days after entry unless extended by the Court for good cause or by mutual consent of the parties.

**DONE** and **ORDERED** in Tampa, Florida, on January 30th, 2017 at 3:46 p.m.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record